Whenever you're ready, Hamsel. Good morning, Your Honors. Thank you for the opportunity to address the court. We believe that given recent developments, it's probably most appropriate to address at the outset the issue of mootness. And of course, I'm referring to the panel decision, Brock v. Newsom. Here, the district court found that the dispute between the parties is not moot. The court found that new variants and vaccine hesitancy make it plausible that defendants may determine it necessary to reimpose restrictions. And I refer you to page 11, lines 14 through 18 of the district court opinion. We submit, plaintiffs submit, that this ruling was correct at the time and continues to be correct. Now, it is certainly the case that the specific measures that we complain of in this complaint have been rescinded. But the governor's and although he has stated that he will be withdrawing it in February of next year, February of 2023, he's not yet done so. And he could reinstate the emergency order at any time. And of course, COVID cases do continue. We are currently experiencing a expected seasonal surge in COVID cases. And we don't really know exactly how this this will develop as well. But you put your finger on it. We don't exactly know. So doesn't that make it too speculative? Well, I will address that, Your Honor. I don't I don't think it is too speculative simply because this is not this is not the first virus that has caused public health problems. There have been numerous variants. And I think that on balance it there is a sufficient probability that these that these issues will recur. And how is any of this distinguishable from Brock? Well, that was going to be my next point. We we believe it is distinguishable because Brock dealt with a very specific issue. And that issue was whether, uh, in in, uh, in school instruction would be prohibited. And the mootness analysis and Brock rested on some very specific proclamations regarding that specific issue. That is, the court refers to the fact that the state has unequivocally renounced the use of school closure orders in the future. That Governor Newsom has publicly reaffirmed his commitment to keeping California schools open for safe in person learning. And, uh, we submit that there are simply no similar renunciations that court could rely on. In this case, there's no evidence that the state is unequivocally, uh, renounced the use of stay at home orders or orders requiring business closures. And so on that grounds, it's not that Brock was necessarily wrongly decided, but it's a different case based on different facts. And we don't believe the facts in this case are sufficiently analogous that Brock is dispositive of the issue of this case. And even even if the state did meet its burden on the voluntary cessation document, we we contend that the that the exception for disputes that evade, uh, gotta refer to my notes capable of repetition, yet evading review applies here. Um, we believe that the evading review is clearly present only if only by virtue of the fact that courts have almost unanimously held that developments have overtaken these disputes such that they become moots. I mean, it appears almost self evident on its face that that the litigation process on these disputes is not going to have an opportunity to, uh, to be completed before the, uh, before the conditions giving rise to the claims have been overtaken by events. Now, again, on the capable of repetition test, it's some of the considerations that we've already addressed and you've questioned me about. But I would point out that under Borrella v. Irvin, 886 Fed 2nd, uh, 1514 at page 1520, the Ninth Circuit held that this is that the capable of repetition test is not a very demanding standard that that that a plaintiff arguing for this exception doesn't have a burden to prove that it's more probable than not that the situation will recur. The plaintiff relying on this exception, we contend the burden on the plaintiff is to show that that there's a that it will recur. And this again comes back to the same considerations I raised in response to the earlier question, which is that Covid is not the first virus that's resulted in public health problems. There have, uh, and and there are have numerous variants of have have come out and, uh, are likely to come out. Or certainly there's some reasonable probability that those variants will emerge in the future. And, you know, given the fact that the plaintiffs or I'm sorry, the defendants have not renounced the types of measures that that we are taking issue with. In this case, we believe that there is at least some reasonable probability that the issue that the matters at issue here, travel restrictions and widespread business closures will be used in the future. Council, can you address if we do view this case as indistinguishable from Brock? Is there, uh, Article three jurisdiction over any of the remaining damages claims? Well, I believe there I believe there are. I mean, the damages claims are asserted against the county and town defendants. They do not have 11th were shut down completely for a brief periods of time, and they were limited in their economic activity for for other periods of time more extended. So they have suffered an injury. In fact, so I believe there there is our Article three standing. Can you point to any specific factual allegations establishing all of the requirements for injury? In fact, standing so not just the broad conclusory assertion that plaintiffs have been damaged, but anything specific to show actual damages as well as causation and redress ability. If you give me a second, Your Honor, you have seven minutes and 50 seconds. That's fine. You know, I understand. It's a long complaint. I do believe that the complaint does allege that that that that the plaintiffs were prohibited during the initial stay at home order issued on March 19th 2020 from, um, from engaging in their business of letting lodging. Well, that's just a statement of what the law said. But is there any any specific allegations that that that you're that there were actually cancellations of contracts because of the operation of those orders and the amount of damages that was caused that is fairly traceable to the government order rather than just, for example, people on their own deciding not to travel during Cove in? Well, I believe there are, and I'm happy to submit some further briefing on that. Your Honor, I recall an allegation of a specific dollar amount of lodgings that were lost. I don't think at the pleading stage that we need to plead. You know, the sort of causation that your last question demanded with the sort of provision of precision that you seem to be interested in. I mean, that the complaint does allege, you know, as I reviewed yesterday, some specific dollar amounts of revenues lost from lodging, and it attributes those to the orders. If you'd like, counsel, you can reserve some time and take a look at it. And during the appellee's argument, if you can reference us to specific paragraphs in the complaint that you believe set forth your best case to establish injury. In fact, I'm also interested in hearing that. Okay, I will do. I will do so. Let me reserve. I'll reserve three minutes on rebuttal. And so I do. I do want to make a couple more points. Try to make it as quickly as possible. I simply don't believe that the 12 B six standard was was followed here. I'll give the best examples of dormant commerce clause in the district court talks about a theory. We don't even articulate that is the discrimination against against out of state economic interests. Clearly, we the facts don't allege that, and they couldn't allege that. But that's not what we're alleging. We're alleging under the branch of the jurisprudence that allows the challenge to to state regulations that have an adverse impact on interstate commerce that far outweighs the local benefits. And we allege that that that these restrictions impacted billions of dollars of interstate commerce. And that's not an implausible allegation. California's the 10th by itself by itself is one of the 10 largest economies in the world. And so when you shut down this or substantially curtail the economy for even a limited period of time, you're impacting substantial amounts of commerce. Is your Is your position, counsel? Is your position that the government can't shut down business for any reason? No, your honor. And what reason? Can I certainly don't? Okay, so, well, that's the I mean, what's the crux of your claim is, is that they improper that you're entitled to compensation or that they made a bad decision? Is that the bottom line? My Well, the bottom line, your honor, and what I focused mostly on is is arbitrary is that these measures are arbitrary and capricious. They are absolutely irrational in that they cause more harm than the harm they prevented. We These are not implausible allegations. They're backed by by, uh, substantial expert opinion and that, you know, any policy that causes more harm than good is on its face. Irrational. It's not that the government can't regulate businesses. And moreover, this is not a regulation that requires a baker to wear a hairnet or even imposes a a complete labor law regime. This is these are wide ranging regulations that impact virtually all of the economy. So it's simply not appropriate to disaggregate the specific liberty interests and property interests involved dismissive, dismiss them serially and not take into account the cumulative effect. What's essentially a tremendous paradigm shift in how public health measures are dealt with or how public health issues are dealt with. So I would say if you want me to distill it down in central claim, that's it. I reached my three minutes. Okay, so I only have one question. I'll reserve your three minutes, and that you agree that the test is rational basis. No, I don't agree. But what's the test? I was not a rational basis. What's the test? Is it beyond a rear arguing out? What? What's the test? Intermediate scrutiny at a minimum, as articulated in the brief. All right. And I'm arguing by analogy from ply Plyler Vito, Your Honor, which is a case where intermediate scrutiny was applied by the Supreme Court, despite the absence of a of a fundamental interest or a protected class. Thank you. All right. Thank you, Counsel. I understand that you were splitting time eight minutes for you, Mr. Taglio and seven minutes for Miss Nazareth. Is that right? That's correct. Your Honor's although I'm certainly willing to go with whatever split makes sense for the panel. No, that makes sense. It's your choice. So eight minutes on the clock. Thank you. Thank you, Your Honor. May it please the court. My name is Anthony Tartaglio, representing the state of California. Officials were being sued in their official capacities. This appeal concerns the Kobe 19 virus, which killed over one million Americans, 96,000 of whom were Californians. And before I get to the merits, I would like to discuss mootness because this appeal is moot for all the reasons already articulated in the Brock opinion. Opposing counsel stated that this case is distinguishable. It's not. It's been a year and a half since the challenge restrictions were lifted. Since then, we've had new waves and variants come and go. And yet the challenge restrictions have been off the books for a year and a half. And the governor stated that he plans to withdraw the state of emergency in a couple of months. Now that state of emergency does not concretely impact plaintiffs because the state emergency by itself does not limit how they run their concern for the panel. The panel could always wait until February to issue an opinion. By then, I expect the state of emergency proclamation will have been rescinded. So, Council, you said that this appeal is moot. That's only as the prospective claims relief only, right? Yes, Your Honor. I'm speaking on behalf of the state, but I would apply the state defendants. But the individual claims remain for the other defendants. That's has to be subject to a different analysis. Well, I will let my co-counsel deal with the damages claims. I think the mootness analysis is a bit different when damages are involved. The state against the claims against the state defendants are purely for equitable relief. There was no claim for damages. So if we if we accept that, um, we knew some controls the case in the state is out. Yes, that's correct. Um, as for the mootness exception of cases that are capable of evading review but repetition, I would note that this court has already issued an opinion on the merits. The slide waters decision establishing that the proper standard of review for these sorts of business regulations is rational basis. So there was time for this court to weigh in, provide guidance as to what the standard is on the merits. Also, the Supreme Court United States has weighed in several times, issued several orders, uh, related to COVID-19 restrictions. So there has been time for that. So for this reason, that exception does not apply. Um, as for the voluntary succession exception, the state is entitled to deference. Well, let me rephrase that. There's a presumption that the state acts in good faith when it withdraws regulations. Here, the regulations were withdrawn a year and a half ago. They have not been placed back. So there's no indication that the state is going to reimpose any of these rules. It's been a year and a half. All the momentum is moving away from these sorts of business restrictions. The state is now focusing on vaccines, focusing on community education and outreach on encouraging masking. That sort of thing. The state has released a starter plan that does not mention business closures, business capacity restrictions, lockdowns, any of that. So, uh, going forward, the state is moving decisively away from those previous measures. Thanks, uh, to the fact that we have vaccines that are being updated. We're getting boosters every few months or so. So, uh, this is the case where the voluntary succession, uh, there's no reasonable probability that these challenge rules will be reimposed. And as the Bradford court explained, theoretical possibility, pretty much everything is possible in theory, but that's not the test for the voluntary cessation test. The test is, is there a reasonable expectation that these rules will be reimposed? And here there's not. It's been a year and a half. All of the momentum, all the facts are moving in the other way. Yeah. Uh, as, uh, as a, uh, so that's mootness. As to the merits, the slide waters decision established that the standard review is rational basis. There's no fundamental right here that was taken away from plaintiffs. There was no invidious discrimination based on a suspect class. These are regulations that applied to all businesses within the state based on whether they were restaurants or based on whether they were hotels and the like. So the standard review is rational basis and under rational basis. Uh, the court does not weigh the costs and benefits. What plaintiffs counsel is suggesting is that the court say, well, we've looked at the cost, we looked at the benefits and maybe the cost weigh the benefits. But under rational basis review, that is not how it works. All the state has to do is assert a plausible rational basis for the rules. And it doesn't have to be particularly the convincing one. Although I think in this case there were strong reasons, but just a rational basis. And it doesn't even need to cite scientific literature to back it up. Even though the state has done so here, rational speculation is sufficient. And in this, I mean, really, are you saying that? I mean, let's be honest. The state had a basis and the basis was based in what it believed was science, correct? That's correct. Okay. So leave it at that. I mean, just they just got an idea and they can say it's rational, but they're not too sure. That's kind of what I hear you're saying. And that's not really what the facts of this case are, right? No, there was a lot of scientific evidence that the state officials considered. There's voluminous scientific literature. We cite a bunch of technical information in our briefs. But even if that were not the case, all that would be sufficient would be a rational basis, a plausible basis. Rational speculation is sufficient, the Supreme Court has said. And in this case, there's much, much more than that. Because these rules, they were designed to encourage social distancing. We know that at restaurants, people have to take off their masks to eat, to drink. At hotels, you have people from all over the country getting together, walking in the same hallways, eating in the same restaurants, being in the same lobbies. So that was the rational basis for these challenged rules. Opposing counsel briefly mentioned the Commerce Clause, I'll briefly mention it as well. There's case law saying that where there's a bona fide public health measure, that's not just a pretext to favor one particular industry, one particular area. There is special deference that is and courts are very reluctant to overturn good faith public health measures, even when there is some impact on interstate commerce. And in this case, any burden on interstate commerce was incidental. There was a large burden imposed by these rules, but that also fell on local businesses as well. There was no targeting out-of-state businesses or anything like that. Well, I have 20 seconds. So in conclusion, the court should find that the claims against the state defendants are moot. Alternatively, the court should affirm the district court because the challenge policies have a rational basis. Thank you. Thank you. Good morning, and may it please the court. My name is Matt Nazareth of Myers Nave, and I represent the Town of Mammoth Lakes Appellees, but this morning I'm also presenting argument on behalf of the Mono County Appellees. With respect to the local jurisdictions, this case is about a specific set of March 2020 and March 2021 in order to combat a once-in-a-century global pandemic. None of these restrictions give rise to any of the claims appellants asserted as the district court properly held, and its judgment should be affirmed in full. Taking the court's cues, I'd like to first address the mootness issue with respect to the local jurisdictions. I think with respect to the injunctive and um, Mr. Tartaglio has adequately addressed that, and for the same reasons those claims are moot with respect to the local jurisdictions. With respect to the damages claims, appellants' damages claims are inextricably linked to their injunctive relief claims, and as a result, those monetary claims are equitable in nature and therefore are effectively moot as well. I'd point the court to Chauffeurs v. Terry at 494 U.S. 558 for the proposition that when monetary relief is inextricably linked to, um, injunctive relief, it's equitable in nature. I'd also like to address this morning, um, that the local orders do not constitute a takings for several reasons. Most fundamentally, moderate commercial restrictions on businesses, such as temporary capacity limitations at issue here, do not constitute a taking, particularly where such restrictions are use of the police power to protect the public health. Before getting into that, I think some context is important. Appellants' argument obscures what this case is really about. In fact, the only COVID-19 restrictions at issue in this appeal as to the local jurisdictions are this set of restrictions placed on short-term lodging between March 2020 and March 2021. For portions of that period, the town had orders in place that variously restricted lodging to 70% capacity and or required a 24-hour gap between occupancies. The town never issued any orders that entirely prevented appellants from offering lodging services. In addition, hotels and short-term lodging were subject to restrictions by the state and county that initially limited who could rent from March 2020 through June 2020. At no time did any of the local orders entirely shut down plaintiffs' business operations. So while appellants have characterized this case as being about orders that touch on every aspect of every citizen's lives, it's actually much more narrow than that. Appellants are individuals and entities who offer short-term lodging services in the town of Mammoth Lakes, and the complaint challenges specific orders that temporarily restricted those services. Counsel, setting aside the takings issue, we don't accept your inextricably intertwined theory for retrospective relief. Is there a standing problem in this case? There is a standing problem, Your Honor. There are several standing problems. I think with respect to the individual plaintiffs, the Abshires and the Butts, they haven't alleged any, as I think Judge Sung pointed out, they haven't alleged any specific factual allegations that this actually impacted their businesses. In fact, we know from their complaint that they were continuing to offer lodging services. We know from their complaint that they both alleged that the properties that they were at issue here were used both for personal and for short-term lodging purposes. And in fact, they were using the properties for personal purposes during this period. So I think it's I don't think that the complaint adequately states that there that there has been any injury, in fact. With respect to the two entity plaintiffs, there's even further standing issues. With respect to Nomadness Corporation, the only allegation is that they contract with entities that provide lodging services. I think as the district court properly held, that's there's no and appellants have never controverted. There's simply no cases that establish that that kind of contractual relationship can establish a standing where it's your contracting party who's subject to certain economic restrictions. And then finally, with respect to Mammoth Lakes Business Coalition, there's another standing issue there because they only assert claims on behalf of their members. On behalf of their members, they can only assert injunctive and declaratory relief claims, which, as we've, I think, adequately discussed this morning, those claims are moot and they can't address damages claims on behalf of their members. So I think there's, I think that adequately addresses all of the various standing issues that appellants have. I think just, I see my time is starting to run short, so I would like to just briefly address the takings issue. I think as a threshold matter, appellants do not allege a legitimate use, or excuse me, a legitimate public use for which they seek compensation. I think at the outset, that bars their takings claim under the Supreme Court precedent in Lingle v. Chevron, which explains that takings presumes a legitimate public use, and the question in a takings case is compensation for that. Where the challenge is a due process challenge to the validity of the restrictions in the first instance, that's not a takings claim, that's a due process claim, and I think for the reasons we've briefed and the reasons that the district court held, there is no due process claim here as well. Unless the panel has any further questions for me, with that, I would just, again, ask the court that, to find that the case is moot for the reasons we discussed, and in the alternative, find that, affirm the judgment on the merits for the reasons discussed. Thank you, counsel. All right, let's put three minutes on the clock. Thank you, your honors. In response to your question about specific allegation of damage, paragraph 123, lines 10 through 14, alleges that a member of the Mammoth Lakes Business Coalition, or whatever the plaintiff is called, suffered $8,275 in cancellations. I realize this raises a prudential standing issue. We've addressed that issue, both in the direct brief and in the reply brief, and we believe that there are sufficient allegations to raise a, or at least to make a claim for prudential standing. I realize that's something that's within the court's discretion, but I would also point out, your honors, that to the extent that the court believes some of these things have not been adequately pleaded, typically, a plaintiff should be allowed an opportunity to amend the complaint. Did you ask for lease amendment below? I believe we did. I can't state for certain that we did, your honor. Can you make a proffer of what specific allegations you would add, if given the opportunity to amend? Not truthfully, I cannot, because I'd have to talk to the clients and see what they could say, but I believe they would. I mean, this is the whole point of the case, is that they were limited in their business, and I believe they could give me some specific facts on that, but I'm not going to blow smoke on the issue, your honor, unless I have something to go on, and honestly, I do want to address the standing. I don't believe that we are asserting the rights of third parties. I mean, we assert a right for a claim to travel. We have individuals, they have a right to travel. We think that's sufficient to state a claim that the stay-at-home orders infringed on their right to travel, and again, if we didn't, I think that we  It's not inconceivable that we could plead claims that our clients believe their personal right to travel was impacted by these orders, and as far as no badness, it is simply not the case. The allegation is just being misconstrued. I mean, paragraph 23 of the complaint says, plaintiff no badness corporation is a California corporation, which is, and was at all relevant times, engaged in managing, operating, and providing lodging services to customers under contract with property owners. To me, that allegation clearly states that no badness corporation had a direct personal financial stake in the business of lodging, which is the requirement under Lujan, you know, to characterize it as a contractual relationship and therefore, as disqualifying, there's simply no basis for that, Your Honor. And again, if that's not adequate, plaintiff should be allowed an opportunity to amend. All right. Thank you, counsel. You're over time. Thank you. Thank you very much. Thank you to all parties for your argument today. The matter is submitted.
judges: NGUYEN, SUNG, Bataillon